WILLIS, Judge.
On appeal from his convictions in a jury trial of breaking and entering with intent to commit rape and of rape, Roger Talley Clifton contends (1) that the evidence is insufficient to support his convictions, and (2) that the trial court erred by refusing to give a jury instruction addressing his perception that the victim consented. We find no error and affirm the judgment of the trial court.
On appeal, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). “The jury’s verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.” Traverso v. *181 Commonwealth, 6 Va.App. 172, 176, 366 S.E.2d 719, 721 (1988).
“A conviction of rape may be sustained solely upon the credible testimony of the prosecutrix.” Myers v. Commonwealth, 11 Va.App. 634, 635, 400 S.E.2d 803, 804 (1991). “ ‘[T]he credibility of witnesses and the weight to be given to their testimony are questions exclusively within the province of a jury.’ ” Id. (citation omitted).
The victim testified that on the morning of January 6, 1994, her next door neighbor, Clifton, entered her house. Her husband was at work and her three children were asleep. She testified that she was in the kitchen, dressed only in a nightgown and underclothes, when she heard a “peck.” She looked out the window and saw Clifton standing outside pointing at the door. She gestured for him to wait. When she walked into the front room, Clifton was already standing inside the door. He grabbed her and began rubbing her breasts. After she told him “to quit,” he twisted her arm behind her back and dragged her to the couch. He bent her over the couch, pulled her panties down, and announced his intention to have sexual intercourse with her. She testified, “I told him no, stop, and I started crying.” However, she said that she did not resist, but submitted to sexual intercourse with Clifton because she was afraid for her children and did not want them to be awakened and see what was happening.
During the intercourse, the victim saw her husband drive by and saw Clifton’s daughter outside the house. She told Clifton of this, but he continued to have intercourse until he was “finished.” When she told Clifton that a black Blazer was pulling into his driveway, he released her and went home. She denied having had intercourse with Clifton previously.
Clifton testified that he and the victim had prior sexual relations in 1991. He testified that on the morning in question, he walked out onto his front porch and saw the victim motioning to him through the window. He walked over to her house and entered through an open door. He testified that she said, “it has been a long time since we did anything.” He *182 testified that she pulled the elastic waistband of his pants out, put her hand inside his pants, and fondled him. She then lifted her nightgown, knelt on the couch, reached behind her, grabbed his penis, and inserted it. He testified that while they were having intercourse, the victim saw her husband’s car go by outside and became nervous. He assured her that her husband would not arrive for a few minutes and said “[ljet’s finish what we started here.”
After Clifton left, the victim telephoned her sister-in-law and her husband. The sister-in-law corroborated this, testifying that the victim telephoned her and told her that Clifton had raped her. When the victim’s husband arrived home, he called the police. Officer Snodgrass of the Abingdon Police Department testified that when he arrived at the victim’s home, she was upset and crying.
The victim was taken to the hospital for a rape examination. Dr. Moore, a medical expert who testified on Chiton’s behalf, stated that according to the victim’s records, the examination did not disclose injury that would normally be expected to result from forcible sexual penetration.
I.
Clifton acknowledges that he had sexual intercourse with the victim, but contends that it was consensual. He argues that her non-resistance proves her consent. We disagree.
The victim was in her own home when Clifton entered. Her three small children were asleep in their rooms, and her husband was at work. Her account sufficiently described a rape and was not inherently incredible. Her explanation that she did not resist because she was afraid for her children was reasonable. “Her credibility and the weight to be given to her testimony were peculiarly within the province of the jury.” Myers, 11 Va.App. at 637, 400 S.E.2d at 805.
II.
The trial court gave the following instructions:
*183 Instruction 15.
The defendant is charged with the crime of rape. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
(1) That the defendant had sexual intercourse with [the victim] who was not then the defendant’s spouse; and
(2) That it was against her will and without her consent; and
(3) That it was by force, threat or intimidation____
Instruction B.
The Commonwealth need not show that [the victim] cried out or physically resisted the defendant in order to convict him of the offense for which he is charged, but the absence of such resistance may be considered to show that the act alleged was not against her will.
Instruction C.
Consent by [the victim] is an absolute bar to conviction of rape. If, after consideration of all the evidence, you have a reasonable doubt as to whether [the victim] consented to have intercourse with him, then you shall find him not guilty.
The trial court refused the following jury instruction, which was proposed by Clifton:
If you find the defendant actually believed that [the victim] was consenting to have sexual intercourse, and if his belief was reasonable, then you shall find him not guilty. The burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant either knew that [the victim] did not consent to sexual intercourse, or that a reasonable person in the position of the defendant would have known that [the victim] did not consent to sexual intercourse.
Contending that the refusal of this instruction was error, Clifton argues that rape is a crime of intent and that the Commonwealth was required to prove that he knew or should have known that the intercourse was accomplished without the victim’s consent. We disagree.
*184 Although proof of rape requires proof of intent, the required intent is established upon proof that the accused knowingly and intentionally committed the acts constituting the elements of rape. The elements of rape, as pertinent to this case, consist of engaging in sexual intercourse with the victim, against her will, by force, threat, or intimidation. See Code § 18.2-61(A); Carter v. Commonwealth, 16 Va.App. 118, 127, 428 S.E.2d 34, 41 (1993). In support of a consent defense, an accused may produce evidence of circumstances, including conduct[1] or statements by the victim, tending to prove consent. He may testify as to his observations or perceptions of statements or conduct by the victim suggesting consent. However, the element to be proven by the Commonwealth is the fact that the intercourse was accomplished against the victim’s will. The accused’s perception may be evidence bearing on the sufficiency of the proof of this element, but it is not itself an element of the crime. See Bailey v. Commonwealth, 82 Va. 107, 111 (1886).[2]
Instructions 15, B, and C properly and fully informed the jury of the elements the Commonwealth was required to prove in order to convict Clifton of rape. Instruction C specifically addressed Clifton’s affirmative defense of consent. The jury was instructed that if it had a reasonable doubt whether the victim consented to sexual intercourse with Clifton, it could not convict him of rape.
The judgment of the trial court is affirmed.

Affirmed.

. Contrary to the assertions in the dissent, we do not hold that the victim’s conduct is irrelevant, nor do we hold that consent can never be shown in the absence of words indicating a willingness to engage in intercourse. We hold merely that the defendant's state of mind regarding the issue of consent is not an element the Commonwealth is required to prove.

. Although the law no longer requires, as proof of non-consent, the level of resistance recited in Bailey, the elements of rape remain the same.