COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Clements and Beales
Argued at Richmond, Virginia


LEON NATHANIEL PRATT, JR.

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1654-05-2                  CHIEF JUDGE WALTER S. FELTON, JR.
                                                        DECEMBER 28, 2006
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                          J. Peyton Farmer, Judge Designate

             Tara-Beth Coleman, Assistant Public Defender (Office of the Public
             Defender, on brief), for appellant.

             Michael T. Judge, Senior Assistant Attorney General (Robert F.
             McDonnell, Attorney General, on brief), for appellee.


        Appellant Leon Nathaniel Pratt, Jr. appeals his conviction for uttering counterfeit currency

in violation of Code § 18.2-170, contending the evidence was insufficient to prove:  (1) that the bills

were in fact counterfeit, and (2) that he knew the bills were counterfeit when he passed them.  For

the reasons that follow, we affirm appellant's conviction.

                                      I.  BACKGROUND

        When the sufficiency of the evidence to sustain a criminal conviction is challenged on

appeal, we "view the evidence in the light most favorable to the Commonwealth, the party

prevailing below, and grant all reasonable inferences fairly deducible therefrom."  Clifton v.

Commonwealth, 22 Va. App. 178, 180, 468 S.E.2d 155, 156 (1996) (citing Higginbotham v.

Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence proved that on May 24, 2004, appellant entered an auto parts store in Fredericksburg and attempted to purchase merchandise from cashier Katrina Cox with five twenty-dollar bills. Cox noticed that the bills felt thicker than legitimate currency, lacked a watermark and strip normally found on the back of twenty-dollar bills, and that one of the bills was not cut straight. Based upon the appearance of the bills and her eleven years of retail experience, Cox believed the bills were counterfeit. When she informed appellant that the bills were not real and that she could not give them back to him, appellant told her that he had obtained the bills from the bank. Cox told appellant that she needed to notify the manager. Appellant became excited and continually asked Cox to give the bills back to him, going so far as to follow Cox to the garage part of the store where she located the manager.

Cox and the store manager, Mark Fuqua, went into the store's office. Once they confirmed the bills were counterfeit, they called the police. While Cox and Fuqua were in the store's office, appellant returned to the store, got back in line, and purchased the merchandise from another cashier. Appellant then left the store without making additional attempts to obtain the bills. Cox and Fuqua followed appellant and retrieved the license plate number of the vehicle in which he departed.

When Officer Nikki Gentry examined the five twenty-dollar bills appellant gave Cox, she immediately noticed that the bills felt thicker and heavier than other currency she had previously handled. She also observed that the bills lacked watermarks and colored threads. Fuqua gave Officer Gentry the license plate number he had obtained. The officer was able to get a message to appellant asking him to contact her. Appellant called Officer Gentry and arranged to meet her for an interview. During the interview, appellant waived his Miranda rights and told Officer Gentry that he had obtained the bills from an unknown person at a bus station in North Carolina in exchange for a one-hundred-dollar bill. He admitted he passed the bills to Cox in order to purchase

parts for his car, but denied knowing that the bills were counterfeit. When Officer Gentry asked appellant why he did not wait at the auto parts store for the police to arrive if he believed the bills were real, he replied, "What were the police going to do?"

At his bench trial, appellant testified that he told Cox he obtained the bills from the bank because he knew he had gone to the bank, but did not remember that he got change at the bus station until his interview with Officer Gentry. The trial court subsequently found appellant guilty of uttering counterfeit currency.

## II. ANALYSIS

### A. Counterfeit Character of the Bills

Appellant first argues the evidence was insufficient to allow the trial court to conclude that the bills were counterfeit because the Commonwealth failed to present any expert testimony to establish that condition. Appellant, however, cites no authority in his brief to support his argument. Nor did he provide any authority in support of his position at oral argument.

Rule 5A:20 requires appellant's brief to contain "a statement of the questions presented" and "the principles of law, the argument, and the authorities relating to each question presented . . . ." Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration. Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). Thus, we will not consider appellant's first question presented.

### B. Appellant's Knowledge that the Bills were Counterfeit

Appellant next argues the Commonwealth's evidence was insufficient to prove he knew that the five twenty-dollar bills he passed to Cox were counterfeit.

> For a defendant to be convicted of uttering a counterfeit bill, the evidence must not only show that he passed counterfeit currency, it must also show that he knew it to be counterfeit at the time he passed it. For, as was stated in Finn v. Commonwealth, 26 Va. (5 Rand.) 701, 710 (Gen. Ct. 1827):

"The passing [of] a counterfeit note . . . may be of itself a perfectly innocent transaction; the guilt consists in passing it, *knowing* it to be counterfeit. If no other circumstances than those of the transaction itself are given in evidence, it would be impossible to ascertain whether it was passed with this *guilty knowledge*, or not. Hence Courts have been driven to the necessity in such cases . . . of admitting evidence of the conduct of the prisoner, so that from his conduct on one occasion, the [fact finder] may infer his knowledge on another . . . ."

Fitzgerald v. Commonwealth, 219 Va. 266, 270-71, 246 S.E.2d 899, 902 (1978) (emphasis in original).

It is well settled that "'the element of guilty knowledge may be supplied by circumstantial evidence . . . .'" Covil v. Commonwealth, 268 Va. 692, 695, 604 S.E.2d 79, 81 (2004) (quoting Roberts v. Commonwealth, 230 Va. 264, 270, 337 S.E.2d 255, 259 (1985)). Indeed, where "[g]uilty knowledge is an essential element of the offense as defined by the statute, . . . 'absent proof of an admission against interest, such knowledge necessarily must be shown by circumstantial evidence.'" Spitzer v. Commonwealth, 233 Va. 7, 9, 353 S.E.2d 711, 713 (1987) (quoting Lewis v. Commonwealth, 225 Va. 497, 503, 303 S.E.2d 890, 893 (1983)). Circumstantial evidence is as competent as direct evidence to prove the elements of a crime so long as the evidence as a whole excludes all reasonable hypotheses of innocence flowing from it. See Tucker v. Commonwealth, 18 Va. App. 141, 143, 442 S.E.2d 419, 420 (1994). However, while the Commonwealth's evidence must exclude all reasonable hypotheses of innocence, "[t]he hypotheses which must be thus excluded are those which flow from the evidence itself, and not from the imaginations of defense counsel." Cook v. Commonwealth, 226 Va. 427, 433, 309 S.E.2d 325, 329 (1983).

The trial court was not required to believe appellant's testimony of how he acquired the five twenty-dollar bills. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

- 4 -

Therefore, the trial court, as the fact finder, was entitled to "draw the reasonable inference that [appellant's conflicting] explanation[s] w[ere] made falsely in an effort to conceal his guilt." Covil, 268 Va. at 696, 604 S.E.2d at 82. See also Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (a fact finder "is entitled to disbelieve the self-serving testimony of the accused and . . . conclude that the accused is lying to conceal his guilt").

Given appellant's conduct in repeatedly attempting to get the bills back from Cox, the physical appearance of the bills which immediately identified them to Cox, Fuqua, and Officer Gentry as counterfeit, and appellant's inconsistent statements to Cox and Officer Gentry as to how he obtained the bills, a rational fact finder could reasonably infer that appellant knew the bills were counterfeit when he passed them to Cox. Compare Carlton v. Commonwealth, 23 Va. App. 629, 478 S.E.2d 730 (1996) (holding the Commonwealth failed to prove beyond a reasonable doubt that the accused passed a lottery ticket knowing it had been altered where the store clerk did not observe that the ticket had been altered, and the record showed that an expert was required to determine that the ticket in evidence had been altered).

Accordingly, the circumstantial evidence was sufficient to exclude all reasonable hypotheses of appellant's innocence. Appellant's conviction, therefore, is affirmed.

Affirmed.